**IN THE UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**      RECEIVED

| | |
|---|---|
| **IN RE:** *SHARON BOST V. WEXFORD* ) | 2019 AUG -8  P 4: 16 |
| *HEALTH SOURCES, INC., ET AL* ) | |
| ) | |
| ) | DEBRA P. HACKETT, CLK |
| ) | U.S. DISTRICT COURT |
| ) | MIDDLE DISTRICT ALA |
| ) **CASE NO. 2:19-mc-3887-ECM** | |
| ) **(Miscellaneous Filing)** | |
| ) | |
| ) | |

## RESPONSE, OBJECTIONS TO, AND MOTION TO
## QUASH THIRD-PARTY SUBPOENA BY NONPARTY ALABAMA DEPARTMENT OF
## CORRECTIONS

The Alabama Department of Corrections objects to, and moves to quash, the third-party

Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in

a Civil Action, issued by the United States District Court for the District of Maryland and served

on July 26, 2019 ("Exhibit A").

### STATEMENT OF FACTS

The Alabama Department of Corrections ("ADOC") was served with a third-party

subpoena, in the above-styled case, from the District Court for the District of Maryland (Exhibit

A). The subpoena orders nonparty ADOC to produce what is likely over a million of pages of

documents from three primary sources: (1) documents relating to ADOC's relationship with its

third party medical provider Wexford Health Sources, Inc. (and/or its parent company Bantry

Group); (2) documents ADOC has provided to the United States Department of Justice ("DOJ")

---

[1] The primary action from which this document arises was filed in (and is pending in) the United States District Court
for the District of Maryland, Case No. 1:15-cv-03278-ELH (*Bost v. Wexford Health Sources, Inc.*). This document is
filed in the Middle District of Alabama pursuant to Fed. R. Civ. P. 45(d)(3)(A). Neither the act of filing this document
nor any statement made in this document should be construed as a waiver of ADOC's objection to the lack of personal
jurisdiction of the District Court for the District of Maryland, nor as consent to that court's jurisdiction. The
undersigned counsel is making a limited purpose appearance only for the purpose of objecting to the subpoena attached
to this document as Exhibit A.

in its pending and on-going investigations of ADOC (relating to Wexford)[2]; and (3) all documents relating to a class action pending in this district, *Braggs v. Dunn, et al*. Case No. 2:14-14C 00601 (M.D. Ala.)[3]. (See Exhibit A, Subpoena in *Bost v. Wexford Health Sources, Inc.*, pp. 5-7).

A considerable number of these documents are publicly available or available from alternative sources. Plaintiff does not need nonparty ADOC to expend its own public resources to obtain and disclose these documents at its own expense. Additionally, a large number of these documents would have been filed under seal by order of this Court, covered by protective orders,[4] produced pursuant to a non-disclosure agreement, and/or would otherwise include information that is privileged or confidential. Finally, besides the fact that Plaintiff's counsel is seeking to enforce this subpoena outside of the Maryland's federal district court's territorial limits, and beyond this subpoena's offense to federalism and the Eleventh Amendment, requiring ADOC to produce these documents would be overly burdensome on ADOC and its staff and would be highly disproportional to the needs of the *Bost v. Wexford* case.

ADOC was served with the subpoena on July 26, 2019 (Exhibit A, pp. 1, 8). The subpoena designated the place of production as a law firm in Montgomery, Alabama, the location of the ADOC administrative office.

## JURISDICTION OVER THIS MATTER IN THE MIDDLE DISTRICT OF ALABAMA

Pursuant to Rule 45(d)(3)(A) of the Federal Rules of Civil Procedure, the court for the district "where compliance is required" has jurisdiction over motions to quash subpoenas. Because

---

[2] ADOC counsel estimates that nearly 300,000 documents have been provided to DOJ as part of their investigations. Because Wexford has been ADOC's medical care provider since April 1, 2018, and the subjects of the investigations often involve to some extent, medical care given, it would be difficult to determine which of those 300,000 documents "relate to Wexford."

[3] *Braggs* was filed over five years ago and remains active. The docket sheet alone is 517 pages long and contains over 2,500 entries.

[4] There are *eight* docket entries in *Braggs* that deal with various protective orders in the case. *See* Docs. 70, 164, 266, 279, 323, 325, 334 and 335.

2

compliance is required in Montgomery, Alabama, the appropriate district court for this motion is the District Court for the Middle District of Alabama.

## MOTION TO QUASH

In a serious offense to federalism, Plaintiffs have enlisted a federal district court 800 miles away in Maryland to drag the State of Alabama into a case in which it is an unrelated nonparty. Worse still, the arm of the State that was served has no meaningful contacts, if any at all, with Maryland, compliance with the subpoena would be unduly burdensome, and the information sought is overly broad and protected. This subpoena (and ones like it filed by counsel for Bost in *ten* states) represents an unconstitutional overreach and an ill-advised fishing expedition. Therefore, the subpoena is due to be quashed.

### I.  The Alabama Department of Corrections Is Not Within the Personal Jurisdiction of the District of Maryland.

The Alabama Department of Corrections does not fall within the personal jurisdiction of the District Court for the District of Maryland. Because federal courts cannot subpoena entities over which they do not have jurisdiction, the subpoena should be quashed. As the Supreme Court reasoned in *U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72 (1988) when addressing subject-matter jurisdiction:

Federal Rule of Civil Procedure 45 grants a district court the power to issue subpoenas as to witnesses and documents, but the subpoena power of a court cannot be more extensive than its jurisdiction. It follows that if a district court does not have subject-matter jurisdiction over the underlying action, and the process was not issued in aid of determining that jurisdiction, then the process is void.

*Id.* at 76. Although *U.S. Catholic Conference* specifically concerned subject-matter jurisdiction, federal courts also cannot subpoena nonparties over which they do not have personal jurisdiction. *Leibovitch v. Islamic Republic of Iran*, 852 F.3d 687, 689-90 (7th Cir. 2017) (noting that issuing a subpoena is "*enforcing* something rather than begging" and thus requires personal jurisdiction);

3

*see also Gucci America, Inc. v. Weixing Li,* 768 F.3d 122, 141 (2d Cir. 2014); *Application to Enforce Administrative Subpoenas Duces Tecum of S.E.C. v. Knowles*, 87 F.3d 413, 418 (10th Cir. 1996).

While the Supreme Court has never addressed the question of when a court has personal jurisdiction over nonparties, several lower federal courts "have adapted the test for civil defendants for use in assessing the question whether they may properly exercise jurisdiction over a nonparty." *Gucci America*, 768 F.3d at 136-37. In other words, if the court has no authority to exercise its power over a person as a civil defendant, it likewise has no power over that person as a nonparty to the suit. And because ADOC lacks contacts with Maryland sufficient to subject ADOC to suit in Maryland, the District of Maryland has no jurisdiction over it for the purposes of issuing a subpoena.

To establish personal jurisdiction, federal district courts sitting in diversity cases must first look to the long-arm statutes of the states in which they reside. *Christian Sci. Bd. of Dirs. v. Nolan*, 259 F.3d 209 (4th Cir. 2001). Unless Bost can show that ADOC transacts business in Maryland, supplies goods or services in Maryland, or uses real property in Maryland, ADOC does not fall within Maryland's long-arm statute. *See Md. Code Ann., Cts. & Jud. Proc.* § 6-103. Therefore, the District of Maryland cannot exercise jurisdiction over ADOC.

Even if ADOC falls within Maryland's long-arm statute, the District of Maryland still must have "general" or "specific" personal jurisdiction over ADOC to issue a subpoena. *See Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). But ADOC does not have operations "so continuous and systematic" in Maryland to "render [it] essentially at home" in that state. *See id.* ADOC therefore cannot fall under the District of Maryland's "general" personal jurisdiction. *See id.* Nor does ADOC have meaningful "minimum contacts," if it has any at all, with the State of Maryland,

4

and so the District of Maryland does not have "specific" personal jurisdiction in this case either. *See id.* at 126.

Ultimately, because ADOC is not within the District of Maryland's personal jurisdiction, the subpoena is improper and should be quashed.

## II.     The Subpoena Is Improper Because Alabama Has Not Waived Its Sovereign Immunity.

The Eleventh Amendment guarantees States sovereign immunity extending "to any suit in law or equity, commenced or prosecuted" against them. *U. S. Const. amend. XI.* Additionally, the States retained their "traditional" sovereign immunity when joining the Union. *See Franchise Tax Board of California v. Hyatt*, 139 S. Ct. 1485, 1496 (2019). Accordingly, the "sovereign immunity of the States ... neither derives from, nor is limited by, the terms of the Eleventh Amendment." *Id.*

The Supreme Court has plainly defined a "suit" against the government as an action where "the judgment sought would . . . interfere with the public administration" or "if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." *Dugan v. Rank*, 372 U.S. 609, 620 (1963) (internal quotations omitted). Because the third-party subpoena would compel the Alabama Department of Corrections to provide documents it would not otherwise disclose, the subpoena is a "suit" against the State within the meaning of the Eleventh Amendment or otherwise. And because the State has not waived its sovereign immunity, the District of Maryland neither had subject-matter jurisdiction to issue the subpoena, nor can the subpoena be enforced. *See Kemper v. U.S. Dep't of Education*, 285 F. Supp. 3d 145, 148 (D.D.C. 2018) ("Sovereign immunity 'goes to the subject matter of the court.'"). The *Bost* subpoena should be quashed.

At least two circuit courts, including the circuit to which the issuing court belongs (Fourth Circuit), have held that the United States and its agencies need only respond to third-party

5

subpoenas if they have waived sovereign immunity. As the Fourth Circuit explained, "[e]ven though the government is not a party to the underlying action, the nature of the subpoena . . . is inherently that of an action against the United States because such a proceeding 'interfere[s] with the public administration' and compels the federal agency to act in a manner different from that in which the agency would ordinarily choose to exercise its public function." *Boron Oil Co. v. Downie*, 873 F.2d 67, 70-71 (4th Cir. 1989) (quoting *Dugan*, 372 U.S. at 620); *see also*, *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 277 (4th Cir.1999) ("[I]t is sovereign immunity ... that gives rise to the Government's power to refuse compliance with a subpoena."). The Second Circuit agreed, writing that, "the enforcement of this [third-party] subpoena duces tecum . . . would compel the EPA to act and therefore is barred by sovereign immunity in the absence of waiver." *U.S. E.P.A. v. Gen. Elec.*, 197 F.3d 592, 597 (2d Cir. 1999).

Two other circuits have also applied this reasoning to third-party subpoenas in the context of tribal sovereign immunity. The Eighth Circuit held in *Alltel Commc'ns, LLC v. DeJordy*, 675 F.3d 1100, 1105 (8th Cir. 2012), that "a federal court's third-party subpoena in private civil litigation is a 'suit' that is subject to Indian tribal immunity." The Tenth Circuit agreed. *See Bonnet v. Harvest (U.S.) Holdings, Inc.*, 741 F.3d 1155 (10th Cir. 2014).

The same logic extends to the immunity enjoyed by the States. To be sure, some courts have rejected the argument that sovereign immunity shields States from third-party subpoenas. *See, e.g.*, *In re Missouri Dep't of Nat. Res.*, 105 F.3d 434, 436 (8th Cir. 1997); *United States v. UMASS, Worcester*, 167 F. Supp. 3d 221, 225 (D. Mass. 2016); *Arista Records LLC v. Does 1-14*, No. 7:08-cv-00205, 2008 WL 5350246, at *3-5 (W.D. Va. Dec. 22, 2008).[5] But these decisions either ignore contrary holdings from the federal and tribal immunity contexts or focus exclusively

---

[5] Both actions featured challenges to subpoenas by nonparty state colleges in light of the historical practice of "routinely permitt[ing]" discovery against "non-party state colleges." *Arista Records*, 2008 WL 5350246, at *3.

on the text of the Eleventh Amendment when determining whether the subpoenas constituted a "suit." But the Supreme Court's recent ruling in *Hyatt* reaffirms that the States' sovereign immunity is not limited by the Eleventh Amendment's text. Thus, when the *Arista* court denied the motion to quash because "the sovereign immunity of states in federal court proceedings is based upon the Eleventh Amendment," 2008 WL 5350246, at *3, and the *UMASS* court denied the motion because "State sovereign immunity is derived from the Eleventh Amendment," 167 F. Supp. 3d 221, 224, the courts ran afoul of *Hyatt*. The Court held that the States retain their "traditional" immunity, which extends beyond the narrow text of the Eleventh Amendment. 139 S. Ct. at 1496. And that immunity extends to subpoenas like the one at issue here. As the Fourth Circuit held when considering a subpoena issued against an employee of the federal sovereign, "[t]he subpoena proceedings fall within the protection of sovereign immunity even though they are technically against the federal employee and not against the sovereign." *Boron Oil Co. v. Downie*, 873 F.2d 67, 71 (4th Cir. 1989). The same is true in this proceeding against Alabama. Because Alabama has not "unequivocally expressed" a waiver of its sovereign immunity in this case, Bosh's third-party subpoena was improperly issued and must be quashed. *See U.S. v. Nordic Village Inc.*, 503 U.S. 30, 33 (1992).

## III. Compliance with the Subpoena Would Impose an Undue Burden on the Alabama Department of Corrections in Conflict with Fed. R. Civ. P. 45(d)

The subpoena would impose an undue burden on the Alabama Department of Corrections. Moreover, many of these documents are publicly available, and ADOC need not produce them. Under Fed. R. Civ. P. 45(d)(3)(A)(iv), it is mandatory that this court quash subpoenas when it finds they cause an undue burden on the party subject to them.

First, many of the documents requested by the subpoena are available through alternative means. For instance, the subpoena requests every document "relating to the allegations of

7

inadequate medical care in *Braggs v. Dunn, et al.*, Case No. 2:14 C 00601 (M.D. Ala)." Many of the *Braggs* documents, at least those not filed under seal or subject to protective orders, have been publicly filed in the *Braggs* case and are easily accessed through the PACER public database of court documents.

Nor is there any indication that Plaintiff Bost has attempted to obtain many of these documents directly from Wexford Health Sources, Inc., who is a party to the primary action and subject to the Maryland federal district court's jurisdiction. It thus appears that the plaintiff in the primary action has not attempted to acquire these documents through these alternative means before subpoenaing ADOC, a nonparty to the case.

Fed. R. Civ. P. 45(d)(1) requires subpoenaing parties to take "reasonable steps to avoid imposing undue burden or expense" to parties subject to the subpoena. Because many of the documents requested are available through alternative sources, and the plaintiff in the primary action has not shown that she has sought them using these sources before subpoenaing ADOC, the subpoena must be quashed. This is especially true given that ADOC is a foreign nonparty to the case, and the Advisory Committee Notes to the FRCP highlight that a "prime concern should be avoiding burdens on [foreign] nonparties subject to subpoenas." Fed. R. Civ. P. 45(f) advisory committee note (2013). The reasoning of the District of Connecticut is persuasive here:

> [T]he information in question appears to be publicly available from a source that is more convenient, less burdensome, or less expensive, without subjecting [subpoenaed nonparty] to undue burden. . . . [The subpoenaing party] believes that taking the time and effort to search the pleadings of the bankruptcy proceeding would be a "very burdensome" task. This may be so, but in the absence of some showing that the publicly available information in that proceeding is inadequate, the onus is properly on [the subpoenaing party] as a party to the litigation. The burden that production would place on [the nonparty] is unreasonable.

*Travelers Indem. Co. v. Metro Life Ins. Co.*, 228 F.R.D. 111, 114 (D. Conn. 2005). Bost has made no showing that the publicly available sources of the documents she seeks is inadequate. This

8

court should follow the District of Connecticut in quashing a third-party subpoena when the requested information is publicly available or otherwise available.

Second, compelling ADOC to provide what could easily amount to over a million pages of documents would obviously impose an undue burden on ADOC. The movant could not simply click on a "copy all" button and burn the documents to a jump drive. Presumably not all documents previously compiled would be deemed to the within the subpoena's coverage. Sorting through them for possible compliance would be a Herculean task. Further, the documents would need to be reviewed based on concerns related to confidentiality, security, and privilege, and would require significant redaction. The cost to ADOC in terms of labor and distraction from its primary duties would clearly be considerable.

Third, the requested information is most likely irrelevant and clearly disproportional to the needs of the litigants in the *Bost v. Wexford Health Sources, Inc.* action.[7] According to the complaint, *Bost* is a single-plaintiff action premised on an incident involving the death of a female detainee in a Baltimore city detention facility in *2012*—nearly six years before Wexford even became ADOC's prison system-wide medical provider.[8] (See Exhibit C, First Amended Complaint in *Bost v. Wexford Health Sources, Inc.*). The obvious differences between the allegations of the Plaintiff in *Bost* are simply too stark to make any of the documents relevant (much less proportional) to the claims and defenses in *Bost.* To state the obvious, the individual medical care providers and administrators in Alabama would be different than those in Baltimore. City jail systems and the medical issues presented there are different from the medical issues presented by state prison systems because the health needs, classification opportunities, and

---

[7] "Parties may obtain discovery regarding nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case...." Rule 26(b)(1), *Federal Rules of Civil Procedure.*
[8] Wexford commenced, per its contract, provision of medical care for inmates assigned to ADOC's custody on April 1, 2018. Wexford had not provided medical services to ADOC prior to April 1, 2018.

treatment options related to shorter-term detainees are different than those concerning long-term prison convicts. Further, the medical issues presented by male prisoners are often different from those presented by female inmates.[9] But most glaring is the temporal difference between when the incident occurred giving rise to the Maryland case, 2012, and when Wexford began to provide medical care to inmates under ADOC's custody, 2018. Requiring ADOC to collect, comb through, and convey to Bost up to a million pages of documents, whose relevance and admissibility are highly questionable, presents a disproportional cost and burden to ADOC when compared to the likely benefit, if any, Bost might obtain from these records produced by a state prison system 800 miles away with a predominately male population and generated six or seven years after the plaintiff's loss.

**IV. The Subpoena Is Overly Broad; The Documents Sought Are Confidential, Sensitive, and Protected; The Information Sought Is Not Reasonably Calculated to Lead to Admissible Evidence; And, the Burden on the Subpoena Target (ADOC) is Disproportional to the Needs of the Underlying Case.**

In addition to the objections stated above, the requests made are overly broad and the documents sought are likely to contain confidential records, security sensitive records, privileged materials, and records not reasonably calculated to lead to admissible evidence. First, the requests are vague and overly broad. There is no way the Plaintiff can justify all the documents she seeks in order to prosecute her single-plaintiff jail-based claim that arose in 2012 in Baltimore, Maryland. The requests are filled with vague and overly broad terms like "any," "including but not limited to," "all," "reflecting or comprising" and "relating to." Use of these terms in the

---

[9] The DOJ investigations are focused solely on ADOC's *male* prison population. Although the *Braggs* litigation will eventually address the medical care of all inmates with ADOC's custody, it has hereto addressed only mental health issues and claims related to the Americans with Disabilities Act. Alabama's inmate population is predominately male. In 2018, there were 24,361 male inmates under ADOC's jurisdiction, but only 2,429 female inmates.

requests removes any reasonable limit to the documents sought and also makes it difficult for the movants to comply.

Also, the documents, many relating to the health of inmates and all generated within the context of a prison system, will obviously contain a lot of confidential information protected by statute (i.e., HIPAA laws) and which implicate security concerns. Federal law protects the privacy of individuals who are not parties to an action, particularly where, as is the case is here, the sought after information is irrelevant to any claim or defense. *Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 2d 225, 229 (9th Cir. 1975); *Small v. Provident Life and Acc. Ins. Co.*, 199 WL 1128945, at * 2 (E.D. Pa. Dec. 9, 1999). Some documents may very well be protected by attorney-client privilege and subject to a work product objection. Finally, many documents sought would fall under seal, protective orders (*Braggs*) or a nondisclosure agreement (DOJ investigations). To the extent the requests seek investigative materials related to a pending criminal investigation, those materials are protected by the law enforcement privilege.

## OBJECTIONS

1.  The subpoena is served outside the jurisdictional limits of the Federal District Court for the District of Maryland, and the Court lacks personal jurisdiction over the subpoenaed party.

2.  The subpoena, if enforced, would violate Alabama's sovereign immunity.

3.  The document requests are vague and overbroad.

4.  Compliance with the document requests would place an undue burden on the movant.

5.  Many documents can be obtained by the Plaintiff from alternative sources.

6.  Many documents sought are under seal, confidential, sensitive, and subject to various privileges and legal protections.

11

7.      Many documents are subject to protective orders or a non-disclosure agreement.

8.      The documents sought are irrelevant, not reasonably calculated to lead to admissible evidence, and are not proportional to the needs of the underlying case.

9.      The time allotted for compliance with the subpoena, 14 business days from service, is inadequate and unreasonable.

Submitted this the 8th day of August, 2019.



STEVE MARSHALL
Attorney General

Carrie E. McCollum (ELL047)
General Counsel

Bart Harmon (HAR127)
Assistant Attorney General

ADDRESS OF COUNSEL:
ALABAMA DEPARTMENT OF CORRECTIONS
LEGAL DIVISION
301 RIPLEY STREET
P.O. BOX 301501
MONTGOMERY, ALABAMA   36130
334-353-4849
bart.harmon@doc.alabama.gov

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of August, 2019, I filed the foregoing with the Clerk of the Court by U.S. Mail to following counsel (and a courtesy copy via e-mail, if available):

Sarah Grady
Loevy & Loevy
311 North Aberdeen St., 3rd Floor
Chicago, IL 60607

_____
Bart Harmon (HAR127)
Assistant Attorney General

13